UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ROBERT W. CHRISTOPH, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 05 C 5966 |
| v. | ) | Judge Joan B. Gottschall |
| BCA, LLC, JOHN F. KENNEDY, and JOHN S. MARTEN, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for partial summary judgment. The defendants, BCA, LLC ("BCA"), John F. Kennedy ("Kennedy"), and John S. Marten ("Marten"), collectively referred to as the "Defendants," have moved for summary judgment on counts I through V.[1] The plaintiff, Robert W. Christoph ("Christoph"), has moved for summary judgment on Counts I through IV. For the reasons stated below, both motions are denied.

### I. BACKGROUND[2]

For a number of years, Christoph, Kennedy and Marten participated in real estate deals together and jointly-held several pieces of investment property. Christoph's involvement

---

[1] The Defendants moved for summary judgment on Counts I-V of the Amended Complaint. On March 25, 2008, both parties' motions for partial summary judgment were denied and the Amended Complaint was dismissed because the court concluded that it lacked subject matter jurisdiction. *See* Order, No. 05 C 5966 (Mar. 25, 2008). The court allowed the parties to reinstate their motions for partial summary judgment once the plaintiff filed a Second Amended Complaint that adequately alleged diversity jurisdiction. *See* 2d Am. Compl. ¶¶ 1-2, 7. The Defendants have not filed an answer to the Second Amended Complaint; however, the Second Amended Complaint differs from the Amended Complaint only in its jurisdictional allegations and the court concludes that there is no dispute over the jurisdictional allegations as the court received no objection to the plaintiff's motion to reinstate.

[2] The facts are taken from the parties' Rule 56.1 statements of material fact and are undisputed unless otherwise noted.

became increasingly limited until, in 1998, Christoph relinquished his right to control the sale or disposition of certain jointly-held real estate investments to Kennedy and Marten. In exchange, JCJ Acquisition, LLC ("JCJ"), a company in which Christoph was the sole member and which owned a special limited partnership interest in fourteen limited partnerships, loaned Christoph $2.9 million, secured by a promissory note. BCA, a company managed by Marten and Kennedy that acted as the manager of JCJ, loaned JCJ the $2.9 million to fund the loan to Christoph. Any funds or credits that flowed out of the limited partnerships were to be set off against the amount Christoph owed on the note to reduce the balance.[3]

The parties' agreement was memorialized, on July 28, 1998, when Christoph and BCA entered into a "Put Agreement." The Put Agreement provides, in relevant part:

> Put Option.[4] [Christoph] is the sole owner of that certain membership interest (the "Membership Interest") in JCJ Acquisition, L.L.C., a single-member Delaware limited liability company that owns the special limited partnership interest in each of the limited partnerships (the "SPAs") set forth on Exhibit A hereto and incorporated by this reference. [BCA] hereby grants to [Christoph] the right to require [BCA] to purchase all or any part of said Membership Interest at any time on or after the occurrence of a Taxable Event (as defined elsewhere herein), by written notice delivered to [BCA]. [BCA] shall have ninety (90) days from the date of delivery of such written notice to close on the purchase of the Membership Interest with respect to which the Put Option shall have been exercised.

*See* Put Agreement ¶ 1, Ex. 11 to Pl.'s Local Rule 56.1 Statement (definitional footnote added). Upon Christoph's exercise of the Put Option, in exchange for his Membership Interest, he was entitled to demand a sum equal to the amount of his tax liability (subject to a cap of $839,000)

---

[3] The parties dispute whether there are two separate promissory notes. *See* Defs.' Resp. to Pl.'s Rule 56.1 Statement ¶ 23 (disputing, without citation to the record, that a BCA promissory note exists in addition to the JCJ promissory note). In either event, it appears that both parties agree that the balance of the note(s) would be paid down as funds flowed out of the partnerships in which JCJ held SPAs. *Id.* ¶ 24.

[4] A Put Option is "[a]n option to sell something (esp[ecially] securities) at a fixed price even if the market declines; the right to require another to buy." Black's Law Dictionary 1121 (7th ed. 1999).

and the balance owing on the promissory note after set-offs.[5] In exchange, Christoph agreed to satisfy the promissory note and to demand no more from the proceeds of any sale of the SPAs than the remaining loan amount and the tax reimbursement. Kennedy and Marten each signed a personal guaranty of full and prompt payment of sums owed upon Christoph's exercise of his Put Option.

In 2002, a property held by Villa Capri Associates, Ltd. ("Villa Capri"), one of the JCJ limited partnerships, was sold. On April 11, 2003, Christoph, after incurring federal tax liability relating to the Villa Capri sale, attempted to exercise his Put Option as to that property only. He received a partial payment of the $80,975.30 sought. Subsequently, all but one of the properties under the control of JCJ were sold or disposed of and Christoph incurred additional tax liabilities. Christoph again attempted to exercise his Put Option, this time in full, demanding that BCA tender a payment of $798,512.35. He has not received any payment and BCA continues to send him tax documentation purporting to reflect that Christoph is the sole member of JCJ.

## II. ANALYSIS

In his Second Amended Complaint, Christoph brings claims for specific performance of the Put Agreement (Count I), breach of contract by BCA (Count II), breach of contract by Kennedy (Count III), breach of contract by Marten (Count IV), and constructive trust against BCA (Count V). Each claim rests on a determination that a Taxable Event occurred which entitled Christoph to exercise his Put Option. The parties dispute whether such a Taxable Event occurred and this issue of contract interpretation is the sole question presented by the cross motions for summary judgment.

---

[5] Essentially, upon exercising his Put Option, the $2.9 million note is cancelled and BCA reimburses Christoph for the tax liability he has incurred as a result of the property sales up to $839,000.

3

**A.    Legal Standard**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the facts and any inferences to be drawn from them in the light most favorable to the non-moving party. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). "On cross-motions for summary judgment, [a court] construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Rd. Joint Venture*, 542 F.3d at 1124.

In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McKenzie v. Ill. Dep't of*

*Transp.*, 92 F.3d 473, 479 (7th Cir. 1996) (quoting *Buckley Dement, Inc. v. Travelers Plan Adm'rs of Ill. Inc.*, 39 F.3d 784, 787 (7th Cir. 1994) and *Celotex Corp.*, 477 U.S. at 322).

**B.     Arguments**

The Put Agreement provides, in relevant part, that Christoph can exercise his Put Option upon the occurrence of a "Taxable Event," defined in the Put Agreement as "any sale or other disposition of the SPAs or the Membership Interest that gives rise to a federal tax for [Christoph]." *See* Put Agreement ¶ 2(b), Ex. 11 to Pl.'s Local Rule 56.1 Statement. Both parties argue that this definition is unambiguous; however, they disagree on what it means and, therefore, whether a Taxable Event has occurred.

       1.     <u>Whether The Put Agreement Is Unambiguous As A Matter of Law</u>

The Put Agreement contains a choice of law provision selecting Illinois law. *Id.* ¶ 5. "The construction of a contract presents a question of law." *Gallagher v. Lenart*, 874 N.E.2d 43, 50 (Ill. 2007); *see also Peck v. Froehlich*, 853 N.E.2d 927, 931 (Ill. App. Ct. 2006) (noting also that the determination of whether a contract is ambiguous is a question of law). A court must strive to "give effect to the intent of the parties." *Gallagher*, 874 N.E.2d at 58 (internal citations omitted). The starting point for the court's analysis is "the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* (internal citation omitted); *see also Kallman v. Radioshack Corp.*, 315 F.3d 731, 735 (7th Cir. 2002) ("If the language of the contract unambiguously answers the question at issue, the inquiry is over.").

In this case, the parties advance diametrically opposed interpretations of the contract and contend that the plain language demonstrates that their construction is correct. At first blush such arguments would seem, without further analysis, to foreclose a finding that the contract is

5

unambiguous; however, "[a] contract is not ambiguous . . . simply because the parties disagree on a provision's meaning." *Wolfensberger v. Eastwood*, 889 N.E.2d 635, 638 (Ill. App. Ct. 2008). Rather, "[a]mbiguity can be found only if the contract language is 'reasonably or fairly susceptible of more than one construction.'" *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000) (quoting *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 477 N.E.2d 30, 33 (Ill. App. Ct. 1985)). Conversely, contract language is unambiguous only if it is susceptible to a single reasonable construction. Thus, the question before the court is whether both proffered constructions are reasonable. If so, then the contract is ambiguous as a matter of law and the court will look to issues of disputed material fact to determine whether summary judgment is appropriate for either party. If, on the other hand, the court concludes that one party's interpretation is *un*reasonable and that the construction advanced by the other party is the sole reasonable construction, the court may conclude that the contract is unambiguous as a matter of law and determine whether either party is entitled to judgment as a matter of law given the facts presented.

The Defendants argue that a Taxable Event occurs only when *all* of the SPAs have been sold, which has not yet happened. In support of their construction, the defendants rely on differing uses of the term "SPAs" in the definitions section of the Put Agreement, namely:

> Definitions. For purposes of this Agreement, the following definitions will apply:
> (a) "Tax Amount" shall mean the amount of federal income tax payable by [Christoph] as a result of *any sale or other disposition of one or more of the SPAs*,
> . . . . (b) "Taxable Event" shall mean *any sale or other disposition of the SPAs* or the Membership Interest that gives rise to a federal tax for [Christoph].

Put Agreement ¶ 2, Ex. 11 to Pl.'s Local Rule 56.1 Statement (emphasis added). The Defendants observe that the Put Agreement defines Taxable Event as "any sale or other disposition *of the SPAs*," in the plural, and contrast this with the definition of Tax Amount as the amount of tax payable "as a result of any sale or other disposition of *one or more of the SPAs*."

6

The Defendants rely on the principle of contract interpretation that "when parties to the same contract use . . . different language to address parallel issues . . ., it is reasonable to infer that they intend this language to mean different things." *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996). In this case, the parties chose to use two different terms, namely "of the SPAs" and "one or more of the SPAs." Moreover, they chose two different terms within the same paragraph, a paragraph that provides vital definitions for the remainder of the contract. It is reasonable to infer that the parties' choice of different words was deliberate and that, therefore, the sale or disposition "of the SPAs" does not have the same meaning as the sale or disposition "of one or more of the SPAs." Thus, under this principle of contract interpretation, the Defendants' construction, namely that the Put Agreement requires *all* of the SPAs to be sold or disposed of before Christoph can exercise his Put Option, is reasonable.

Christoph contends that such a construction leads to a reading of the Put Agreement that frustrates its very purpose and, therefore, the only reasonable construction of the contract is that the sale or disposition of a single SPA from within the group of SPAs constitutes a Taxable Event. In support of his construction, Christoph relies on a different rule of contract construction, namely that the contract must be read as a whole to determine the meaning of specific phrases.[6] *See, e.g.*, *Gallagher*, 874 N.E.2d at 58 ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others."); *Peck*, 853 N.E.2d at 932 ("Words derive their meaning from the

---

[6] As part of his argument that the unambiguous contract language entitles him to summary judgment, Christoph also asks the court to consider the Defendants' past conduct. However, "extrinsic evidence is admissible to explain the meaning of words in a contract only when there is an ambiguity or the words are susceptible of different interpretations." *See Lee v. Allstate Life Ins. Co.*, 838 N.E.2d 15, 24 (Ill. App. Ct. 2005). Thus, the court will consider the evidence of past conduct only after it has made a determination that the contract is ambiguous.

context in which they are used, and the contract must be viewed as a whole by viewing each part in light of the others.").

To begin with, Christoph reads the definitions of Tax Amount and Taxable Event in parallel and argues that if a Taxable Event only occurs upon sale of *all* of the SPAs, the definition of Tax Amount, which refers to "*one or more* of the SPAs," is rendered nonsensical. However, as the Defendants point out, it is possible to read both of these provisions in harmony with the Defendants' interpretation of Taxable Event. If a Taxable Event is triggered only when all of the SPAs are sold, then upon the sale of a single SPA, Christoph would incur a tax liability so that a Tax Amount may be due, but BCA would not be obligated to refund the tax liability to Christoph until he exercises his Put Option after all the SPAs have been sold. Thus, Christoph's argument is not the only reasonable interpretation.

Christoph next reads the definition of Taxable Event in the context of the paragraph describing his Put Option, which provides in relevant part that BCA "grants to [Christoph] the right to require [BCA] to purchase *all or any part of said Membership Interest* at any time on or after the occurrence of a Taxable Event." *See* Put Agreement ¶ 1, Ex. 11 to Pl.'s Local Rule 56.1 Statement (emphasis added). Christoph argues that, if he cannot exercise his Put Option until all of the SPAs have been sold, there would never be a situation in which he could put up only a part of his Membership Interest because at the point at which all the SPAs have been sold, there is no Membership Interest remaining. The argument is not especially well developed. Nevertheless, the court notes that the contract distinguishes the term Membership Interest, namely ownership of JCJ which in turn owns the SPAs, from the term SPA. *See, e.g.*, *id.* ¶ 2(b) (discussing the sale or disposition "of the SPAs *or* the Membership Interest"). Applying the contract construction principle relied on by the Defendants, the parties used different terms to signify that the items

were not coterminous.  It is also notable, as Christoph argues, that the parties did not simply describe the triggering event for Christoph's Put Option as the sale of all of the SPAs in paragraph one; rather, they added a level of complexity by using the term "Taxable Event" and providing a separate definitional paragraph.  It is reasonable to infer that the parties drafted the contract with such a level of abstraction because the possible actions that could give rise to a Taxable Event were too complex to be stated simply in one paragraph or phrase.

Finally, again considering the term Taxable Event in the context of the whole contract, the court observes that paragraph one of the Put Agreement provides that Christoph may exercise his Put Option "on or after the occurrence of *a* Taxable Event."  It does not say "on or after the occurrence of *the* Taxable Event."  The parties chose to use the indefinite article "a" rather than the definite article "the," which allows an inference that they anticipated that more than one Taxable Event could occur.  *See, e.g.*, *Sibenaller v. Milschewski*, 884 N.E.2d 1215, 1219 (Ill. App. Ct. 2008) (noting that "'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").  Given the language used in the Put Agreement, the court concludes that, under the "whole contract" principle of construction, Christoph's argument, namely that the Put Option is triggered once *any* of the SPAs are sold or disposed of, is reasonable.

Both parties moved for summary judgment on the theory that the contract was unambiguous.  The court finds that both parties' proffered constructions are reasonable; therefore, it concludes that the contract is ambiguous as a matter of law.  *See Gallagher*, 874 N.E.2d at 58 ("If the language of the contract is susceptible to more than one meaning, it is ambiguous.").  Any arguments regarding the contract's ambiguity in the parties' cross briefs are construed as attempts to raise issues of material fact to defeat the other party's motion for

summary judgment. The court now considers whether the record discloses specific material facts showing that there is a genuine issue for trial.

2. Whether There Are Disputed Material Issues of Fact

The parties devoted the vast majority of their briefing to convincing the court that the contract was unambiguous. Nevertheless, each side has pointed to specific facts that raise questions about the correctness of the other side's proffered interpretation of the Put Agreement.

Christoph argues in his motion for summary judgment that it is not necessary for all of the SPAs to be sold before he can exercise his Put Option and that a Taxable Event has already occurred. Both of the individual defendants testified at their depositions, in their individual and corporate capacities, that they understood that a "Taxable Event" triggering the Put Option would occur only upon complete disposition of the SPAs. *See* Kennedy Dep. 22:7-15, Ex. 2 to Defs.' Statement of Additional Facts in Opp'n to Pl.'s Rule 56.1 Statement (stating that the intent was to have all the sales take place to constitute a Taxable Event because "[i]t was never contemplated that these properties would be spun off as individual properties, and that had been discussed"); Marten Dep. 38:3-5, Ex. 3 to Def.'s Statement of Additional Facts in Opp'n to Pl.'s Rule 56.1 Statement (testifying that his understanding "is that when all of the SPAs are sold, Mr. Christoph can exercise his rights under the Put Agreement").[7] Such testimony is sufficient to raise an issue of material fact as to the intended meaning of the contract. Christoph's motion for summary judgment on Counts I through IV is consequently denied.

---

[7] The Defendants rely on Kennedy and Marten's deposition testimony only in their response to the plaintiff's motion for partial summary judgment and do not assert these materials in support of their own motion. Christoph fails to respond to the additional statements of material fact, rendering them undisputed. *See* Local Rule 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.").

10

In their motion for summary judgment, the Defendants argue that a Taxable Event occurs only when all of the SPAs have been sold and that Christoph's attempted exercise of the Put Option is premature because not all of the SPAs have been sold. Christoph argues that the Defendants' past conduct demonstrates that such an interpretation of "Taxable Event" was not intended. He points to the undisputed fact that the Defendants made a partial payment of the sum Christoph demanded upon the sale of Villa Capri. *See* Defs.' Resp. to Pl.'s Rule 56.1 Statement ¶ 38 (admitting that Kennedy contributed funds to pay Christoph $40,487.65, half of the Taxable Amount). Although the Defendants argue that the payment was voluntary and not mandated by any exercise of the Put Agreement, construing all facts in the light most favorable to Christoph as the non-movant, the payment could be related to Christoph's partial exercise of his Put Option. Thus, a reasonable jury could agree that the Defendants' past conduct shows that they agree with Christoph's interpretation of the Put Agreement.

The court concludes that there is a factual issue as to the intended meaning of the term "Taxable Event" that precludes summary judgment for either party. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 645 (7th Cir. 2006) ("Summary judgment is not warranted when there are genuine issues of material fact with respect to the interpretation of a contract.").

### III. CONCLUSION

For the reasons stated above, the motions for summary judgment are denied. The parties shall appear for a status hearing at which time the court will set a trial date.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 17, 2008

11